Sarah E. Rice et al., Appellees, v. L. C. Burgess, Appellant.

1. INSTRUCTIONS—*when refusal to exclude particular counts not subject to review.* In order to save for review the propriety of the action of the trial court in refusing to exclude from the jury the particular counts of a declaration, it is essential that a peremptory instruction limited to such counts shall have been presented and refused.

2. VARIANCE—*when objection to, comes too late.* An objection of variance not raised in the trial court cannot be first urged on review.

Trespass on the case. Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1909. Affirmed on *remittitur.* Opinion filed October 25, 1909.

JAMES HICKS and A. C. EDIE, for appellant; LE FORGEE & VAIL and PHILLIP L. MILLER, of counsel.

F. R. WILEY and WHITLEY & FITZGERALD, for appellees.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit by the plaintiffs, Sarah E. Rice and C. L. Schellenger, against the defendant, L. C. Burgess, to recover damages for the wrongful taking of certain personal property in which the plaintiffs claimed a two-thirds interest as tenants in common or joint owners with the defendant. The declaration contains four counts, of which three counts in trespass charge the defendant with having wilfully and malic-

iously taken and carried away one linotype machine, one gasoline engine and certain books of account, records and papers, all being part and parcel of a certain newspaper and job printing plant known as the *Piatt County Pilot,* and with having wrongfully taken possession of and locked up the premises in which said property was kept, whereby the said business was necessarily discontinued and ruined; and one count in case which charges that the same property had been leased by the plaintiffs to one Kilborne who was in possession and management of the same, and that the defendant wrongfully contriving to injure the reversionary interest of the plaintiffs therein took and converted the same to his own use and wrongfully seized and locked up the office in which said business was conducted, whereby the said newspaper was forced to suspend publication and the said business became a total loss to the plaintiffs. A trial by jury in the Circuit Court of Macon county resulted in a verdict and judgment against the defendant for $3281, from which judgment he prosecutes this appeal.

It is first urged that the verdict of the jury is against the manifest weight of the evidence. A detailed review of the conflicting evidence in the case would necessarily extend this opinion beyond reasonable bounds. There is evidence in the record tending to show, and we think the jury were warranted in finding, a state of facts substantially as follows: Prior to July 1, 1905, C. H. Kilborne and his father were the owners of a newspaper and job printing plant in Monticello, Illinois, known as the *Piatt County Pilot,* which plant was equipped with a cylinder press, two job presses, a paper cutter, paper folder, gasoline engine, type, office fixtures, paper stock, books of account and subscription books. At the same time and up to the time of the transactions here involved the defendant conducted a rival newspaper in Monticello, known as the *Piatt County Republican.* On July 1, 1905, A. R. Spicer purchased a two-thirds interest in the *Piatt County*

*Pilot* from the father of C. H. Kilborne and the business was thereafter conducted by C. H. Kilborne. In September, 1905, Kilborne suggested to Spicer the propriety of purchasing a linotype for use in the business, which machine Kilborne represented could be purchased for $1500, and further represented that he had on hand sufficient money belonging to the business to make the first cash payment of $250, and that the remaining payments could be made out of the proceeds of the business. In October following, Kilborne purchased a Merganthaler Linotype Junior, No. 77, for the sum of $1500 payable as follows: $250 in cash and thirty-four notes for $35 each, payable monthly, and one note for $60, which notes were executed by Kilborne to whom a bill of sale for the linotype was made, and Kilborne executed a chattel mortgage on the linotype to secure the payment of said notes. The linotype was installed in the office of the *Pilot,* and three or four employes, whose services were no longer required by reason of the purchase of the linotype, were discharged. During all of the time that Kilborne managed the business all of the proceeds of such business were deposited by him to the credit of his individual account at the bank. In September, 1906, Spicer sold a one-sixth interest in the said business, including a like interest in the linotype, to the plaintiff Schellenger, who assumed to pay his share of the unpaid balance on the purchase price of the linotype, and in December following, Spicer sold his remaining one-half interest in the business, including a like interest in the linotype, to one McGinley, who, likewise, assumed the payment of his share of the unpaid balance due for the linotype. On January 1, 1907, McGinley executed a lease of his one-half interest in the business of the *Piatt County Pilot* to C. H. Kilborne for a term of one year, whereby Kilborne was to manage the business upon the following terms: First, to pay as rent therefor at the end of each and every month a sum of money equal in amount to 7½ % of the entire

gross income of the business; second, to pay in addition thereto, the lessor's one-half part of certain monthly payments due on the linotype; third, to pay all other incidental expenses of the business including the premium upon $3700 insurance upon the plant. It was further thereby agreed that the business should be conducted as the individual business of the lessee, and that it was not the intention of either party thereto to form. a partnership relation as to said business. Shortly after the execution of said lease Kilborne procured a lease, upon like terms, from the plaintiff, Schellenger, of the latter's one-sixth interest in the property. On August 21, 1907, McGinley sold his one-half interest in the business, including a one-half interest in the linotype, to the plaintiff, Sarah E. Rice, and also assigned to her his lease to Kilborne. In August or September, 1907, the defendant Burgess opened negotiations with McGinley for the purchase of an undivided two-thirds interest in the business and property, being the one-sixth interest owned by the plaintiff, Schellenger, and the one-half interest owned by McGinley, or the plaintiff Sarah E. Rice, and Burgess was then informed by McGinley that the linotype was a part of the property of the business, and the negotiations were conducted by Burgess upon that assumption. The negotiations between Burgess and McGinley did not result in a purchase by Burgess, but on November 2, following, Burgess purchased from Kilborne the latter's one-third interest in the business and property of the *Pilot* for the sum of $1000, and assumed by such purchase to acquire the entire ownership of the linotype upon the representation of Kilborne that the linotype was his individual property. The sale by Kilborne to Burgess was negotiated and closed about midnight on Saturday, November 2, and on the following Sunday morning Burgess took possession of the entire business and property of the *Pilot*, and placed a padlock on the door of the building where the property was located and the business was con-

ducted. The building in question was owned by Dighton, a brother-in-law of Burgess, who claimed a balance due him of $225 for unpaid rent, and on Saturday, November 2, or Monday, November 4, Dighton caused a distress warrant to be issued to recover such rent. Early Monday morning, November 4, Burgess removed the linotype and a gasoline engine from the building and installed the same as a part of the plant of the *Piatt County Republican* conducted by him in another building. Thereafter, on the same day, the officer having the distress warrant, demanded the keys to the Dighton building from Burgess and upon receiving the same levied the warrant upon the remaining property in the building. A judgment was subsequently recovered in the distress proceeding for the rent in arrears, and special execution awarded against the property levied upon. On Wednesday, November 6, McGinley went to Monticello and demanded of Burgess that he return the linotype and gasoline engine to the office of the *Pilot*. Burgess refused to comply with the demand as to the linotype but admitted that he was liable for a two-thirds interest in the gasoline engine. In explanation of his conduct in placing a padlock on the office of the *Pilot* and removing the linotype and gasoline engine, which were necessary equipments for the publication of the *Pilot*, Burgess then said that as he had one newspaper to look after he did not have any use for the *Pilot* and did not care to look after two. Thereafter, the business and publication of the *Pilot* was necessarily discontinued and ceased to exist as a going concern. Kilborne left Monticello immediately after the sale of his interest to Burgess, and so far as the record discloses has not been since heard from. We think a consideration of these facts fully justified the jury in finding a verdict for the plaintiffs.

The fact that some of the payments made by Kilborne upon the purchase price of the linotype were the proceeds of money borrowed by him for that purpose

does not establish his ownership of the machine. The payments so made by him, in part at least, appeared in the books kept by him as having been charged against the earnings of the business, and as he kept but one bank account and that in his own name, it is clearly inferable from his financial condition that he used the funds derived from the business for his personal purposes and any money he may have borrowed and applied in payment for the linotype was thus used by him in lieu of the funds derived from the business and which he had misappropriated.

It is next urged that the trial court erred in refusing to direct a verdict for the defendant on the trespass counts of the declaration. The failure of defendant to preserve this question for review by proper motion limiting the request for a peremptory instruction to the counts in trespass, precludes the necessity of discussing the technical rules of pleading involving the distinctions between trespass, and trover and trespass on the case, urged upon our attention by counsel for defendant. No question of variance was raised in the court below, and the case was tried by defendant upon the theory that there was a right of recovery under the trespass counts of the declaration, to which the defendant pleaded the general issue. It is now too late to raise the questions sought to be raised upon that branch of the case.

The property in question was owned by the several parties in interest as tenants in common and not as partners, and in such case the right of the plaintiffs to resort to an action of trespass is expressly authorized by the statute. Rev. Stat. 1908, chap. 76, sec. 2.

As to the final contention that the verdict of the jury is excessive in amount we are satisfied that the error in that respect is well assigned. While the conduct of Burgess justified the jury in awarding punitive damages we are constrained to hold that they exceeded the limits of propriety in that respect. A careful consideration of the evidence compels us to the conclusion

that the valuation of $6000 put upon the property and business of the *Pilot* when it was a going concern by the witness Spicer, is largely exaggerated. The cost price of the linotype was $1500, of which amount about $450 was still unpaid, and the value of the gasoline engine was from $75 to $100. We are persuaded that no inconsiderable part of the consequential damages suffered by the plaintiffs by reason of the peremptory discontinuing of the business was occasioned by the levying of the distress warrant by the landlord Dighton.

If within twenty days the plaintiffs will remit the excess above $2000 from the judgment, the judgment will be affirmed for that amount, otherwise the judgment will be reversed and the cause remanded.

*Affirmed upon remittitur.*

*Remittitur* filed and judgment affirmed November 3, 1909.